We'll now turn to the next argument on our calendar, 25-6100, Suchak v. Teksystems. And I'm not sure, I guess, Ms. Franz-Gilmour is first? Yes, Your Honor. Please proceed. Would someone please close the door in the back? Thank you. May it please the Court, Ray Franz-Gilmour appearing on behalf of Mr. Suchak alongside my co-counsel, Alexis Schwartzman. I will argue the September and April inquiry claims to the Court, while Ms. Schwartzman will argue the retaliation claim. We'd like to reserve three minutes for rebuttal. We're asking that this Court reverse and remand the district court's grant of summary judgment as to all three claims today. Beginning with the inquiry claims, I want to spend the bulk of my time on the April inquiry. But to first briefly address the September inquiry, we've shown that that claim was administratively exhausted by the OFCCP complaint, and that the district court applied the wrong causation standard for an inquiry claim. Turning to April, however, that claim instead hinges on liability. Tek is liable for the April inquiry under both the plain text of the ADA, as well as the joint employer standard for liability. Beginning with the plain text, under section B2, Tek is liable for participating in a relationship with a company that has the effect of discriminating against Tek's own employee. Now, the district court acknowledged that under the standard Tek would be liable. However, the district court erred in holding that a regulatory exception applied because the inquiry only impacted Mr. Suchak as an applicant of Mahindra and not as an employee of Tek. But the record contradicts this, your honors. At a minimum, because his job placement was at Mahindra, he had to continue to work with the very people who had discriminated against him for months after the inquiry as a part of his assignment with Tek. Let me ask you this. Even if we assume exhaustion, and we assume that the inquiry itself was a violation, doesn't your client have to show damages? And here, he worked through his entire assignment, wasn't fired, even though he didn't fill out the form. What are your damages for the inquiry, just focused on the inquiry? Your honor, could you clarify whether you're referring to the September or the April? Either one, frankly. But you're talking about the April and September 2020 inquiry, so you can focus on that. Your honor, as to the September inquiry, the district court erred because regarding the question of damages, it held that Mr. Suchak had to demonstrate intentional discrimination stemming from his disability. Even if I agree with you, you don't have to show intentional discrimination. You still have to show damages, right? And you've argued compensatory and punitive damages. Focus first on compensatory. What are his compensatory damages here for just the inquiry of April and September of 2020? Your honor, specifically for the September claim, while we believe that he was afforded a trial where he could present the full breadth of the evidence, we hold that under the evidence presented at summary judgment, it was sufficient that he presented evidence of punitive damages. You have to have compensatories to have punitive, so start with compensatory. What are his compensatories? Your honor, in a way, this is a chain of causation effects where his initial inquiry then created a relationship that ultimately led to the April inquiry and later led to the retaliation. So how a jury chooses to draw the line there, we would say that that's a question best left to the jury, but that he did show that because of these inquiries, he was in his opposition to those inquiries, he was later terminated. Okay, so you're admitting that if we focus just on the inquiry from April 2020, you can't show any compensatory damages. Your honor, as to the April claim, he not only was he terminated from Tech Systems, but he also lost this possible conversion in future employment through Mahindra. Okay, you've got a separate claim for termination, right? Correct, your honor. As retaliation. So right now I'm just focused here on your inquiry claims. And so what I'm asking you to do is point me to any evidence you produced on summary judgment of compensatory damages suffered by Mr. Suchak as a result of these inquiries. Yes, your honor, I would still point the court to the ultimate termination. Okay, so it was a domino's effect. Yes, your honor, a chain of causation, if you will, where his opposition to the inquiry ultimately was what caused this domino's to fall. Now, under the plain text of the ADA, specifically section B2, there's that relationship aspect. But again, as I said, his assignment required him to work at Mahindra, and because of this inquiry, he was later terminated. But even if- Counsel, could I just have a factual question for you about the April claim? As I understand it, Tech Mahindra offered Mr. Suchak this internal position to start after he was done at Integris, and Mr. Suchak told Tech Systems that Tech Mahindra was requiring him to file this form, CC305, Tech said that these onboarding documents really weren't associated with Tech. And later on, I guess my question is, after this kind of back and forth about filling out the form, does the record show whether the alleged inquiry ever ended up happening? Your honor, the record shows that to Tech's knowledge in the affidavits they submitted, that they were told that Mahindra did make the inquiry of Mr. Suchak in September and April, and in fact, in September, Tech was directly involved in supplying that form. So going on the credibility of Mr. Suchak, the record, he did inform his employers on page 160 and 200 that that discrimination- So it's actually, the form was actually tendered to Mr. Suchak. Yes, your honor, the inquiry claims that he raises are always for form CC305. Well, I'm talking about April. I'm not so sure about September, but I'm just talking about April. Your honor, in both the September and the April claims, it was form CC305 that was the inquiry. Right, but they backed off on September, right? Can you clarify, your honor, what you mean? Did it happen in September as well? Did he, was he forced to fill out the form? Your honor, in both cases, what happened was that he was presented with form CC305. He felt uncomfortable with completing it, so he reached out to the Department of Labor for guidance. He asked for more time, and he came back to his employer after hearing from the Department of Labor, which said that he did not have to return this form because the form was inherently voluntary. So where's the problem? Where's the inquiry violation if that's where we end up? Your honor, as to April, under the joint employer standard, Tech is liable because it knew or should have known of the violation, yet it took no corrective action. I'm asking if there was a violation, if that's where things shook out. Yes, your honor, we're asking this court to hold that form CC305, because Tech has not raised the affirmative defense of business necessity, did constitute an impermissible inquiry claim because it asked whether the employee has a disability, and then they leveraged his continued employment on him answering that question. I'd like to yield the remainder of my time to my co-counsel. Thank you. May it please the court. My name is Alexa Schwartzman, and as to the retaliation issue, we asked this court to reverse the district court because Tech failed to meet its burden at step two of McDonnell Douglas to offer legitimate defenses for all three adverse actions. Tech gave no reason at all for two of the adverse actions Mr. Suchak suffered, and its defense for its own termination of Mr. Suchak was illegitimate. Tech has argued consistently that the sole reason it terminated Mr. Suchak was because Mahindra decided not to extend or renew his temporary assignment. However, we have shown that Mahindra's decision not to extend or renew the assignment was retaliatory, and this cannot serve as a legitimate non-retaliatory defense for Tech's termination at step two under Burton from. Why is Tech responsible for Mahindra's insistence on the form, or retaliation for not filling out the form? Your Honor, Tech's liability hinges primarily on the fact that they both knew or should have known of Mahindra's discrimination and retaliatory intent, and because it failed to take corrective action within its control. What was the corrective action within its control? It can't offer him a position at Mahindra, can it? No, Your Honor. However, it could have, as it did in September of 2020 when it learned that Mahindra was requiring that he complete the form in order to receive the extension. Tech, in September of 2020, asked Mahindra to waive the form requirement in that instance, which shows that it did have corrective action that it could have taken in April of 2021 when the communication logs show that Tech did reach out to Mahindra to ask if they were going to extend or renew the contract, and only after they confirmed that Mahindra was not going to extend or renew that Tech then terminated him. Furthermore, we would argue that Tech could have had freedom of contract and could have put in its contract some sort of escape clause for this kind of situation. It could have contracted and said that if Mahindra makes a unilateral decision that requires Tech to violate the law, that Tech can override that decision. So Tech could override it by ordering Mahindra to hire him? Tech could have required that Mahindra not immediately terminate at the end of the contract, that there could have been a probationary area where Tech had conducted an investigation into the retaliatory allegations that Mr. Suchak was putting forth. Tech had ample opportunity to take corrective action in this case and took none. However, Your Honours, even if Tech is not liable per se for the retaliation of Mahindra, Mahindra's retaliation still cannot be a legitimate non-retaliatory defense at Step 2 for Tech's actions. This is supported by Burton from the Fifth Circuit, from the Third Circuit, and Kniep from the Northern District of Oklahoma. Another entity's retaliatory intent cannot be a non-retaliatory defense at Step 2. What is Step 2? At Step 2, Your Honour, of the McDonnell-Douglas framework is the burden on the defendant employer to show that they had a legitimate non-retaliatory reason for the adverse action that it took against the plaintiff. And the adverse action, I thought the adverse action was the termination of employment with Tech. Yes, Your Honour, that is correct. Well, didn't that happen by virtue of the contract? Your Honour, it happened by virtue of Mahindra deciding not to extend or renew the contract. But the contract on its face, in its self-executing, said that it ended when the assignment ended. Your Honour, the record supports that on page 152 of the record, which contains those clauses from the employment agreement, it says that the employment ends when it ends with the client because the client decided or otherwise. So yes, it could have just automatically terminated. However, the record also supports that Mahindra considered extending or renewing his assignment, and it was only their decision not to extend or renew that caused Mr. Suchak to be terminated. I'm confused here. Tech provides workers for companies that it contracts with. If you need somebody, we'll supply that person. And you're saying that if that person says, we don't want this person and we're ending the contract, that Tech can tell them, no, you've got to keep working? Not necessarily. Not necessarily, Your Honour. We're arguing that in this case, because Tech knew or should have known that Mahindra's decision not to extend or renew the contract was retaliatory, Tech knew that this was a violation. So what could it do? Could it say, Mahindra, you have to keep this guy on... I mean, that's a good way to lose all your clients, isn't it? Your Honour, not necessarily saying that Tech could have or should have unilaterally extended the contract. However, Tech could have investigated the reason as to why Mahindra... To what end? I mean, the whole contract is to supply an employee to someone who wants an employee. And you're saying they can't make Mahindra keep the employee, but they can investigate Mahindra and see whether they violated some law itself? They're going to enforce the equal employment statutes? Yes, Your Honour. It is Tech's duty in contracting with another business entity to ensure that that entity is not retaliating or discriminating against its own employees in violation of the Americans with Disabilities Act. Tech cannot hide behind blind contractual compliance to shield itself from liability from the law. And we would ask that we could reserve the rest of the time. Could I just, as a follow up, if Tech Mahindra had told Mr. Suchak on September 1, 2021, it's the day after August 31, that it would not hire him for permanent employment, would Tech still be liable? No, Your Honour, because at that point, Mr. Suchak would no longer have been an employee of both Tech and Mahindra. However, throughout all of the events underlying this case, Mr. Suchak was an employee of both Tech and Mahindra. And the conversion was only for a position extending his temporary assignment with Mahindra at Tech to a full-time position in that same role. Which, if he had been full-time, Tech would have had no involvement whatsoever in that employment, right? Right, Your Honour. However- They do temporary employees. Yes, Your Honour, and for this temporary assignment. And so, Tech, do you have any evidence in the record that Tech is involved in Mahindra's decisions to hire permanent employees? Yes, Your Honour, on pages 176 to 178 of the record, there are communication logs that Tech attached to its motion for summary judgment that show that Tech was communicating with Mahindra and, quote, working on the conversion. Now, Judge Matheson, in Parker Excavating, you found that a termination letter by one client's managers that ended up being on the temporary employment agency's letterhead was sufficient to create a genuine dispute as to liability. So, we would ask that you would find the same here. Just one last clarification. Was Mr. Suchak placed with Integra or was he placed with Mahindra? Originally, Your Honour, he was placed with Integra and then Integra brought Mahindra in about three months into his initial temporary assignment. Wasn't he still placed with Integra? Yes, Your Honour. However, Mahindra took over as his day-to-day supervisor and all communications in the record support that after Mahindra was introduced that all communications about Mr. Suchak's assignment happened between Tech and Mahindra rather than Integra. Thank you. Thank you.  Good morning. My name is Eric Packhill on behalf of Tech Systems along with Megan Hansen and our client Megan O'Meara. May it please the Court. I'd like to pick up on the last point that was made because I think it's an important point in terms of the relationship. If we talk about the relationship in this case, the relationship was with Integra's and Tech just happened to inherit Mahindra later as Integra's IT services company. But overall, I would like to begin with Tech Systems did not make any impermissible inquiry that's at issue in this case. Mahindra is the company that allegedly asked Mr. Suchak to complete a self-disclosure form. And that's undisputed. That's in the record. And as far as the termination itself, Tech Systems terminated Mr. Suchak's employment because the assignment ended. And the contract said that's when employment ends. And there's no record evidence to contradict that. Go ahead. Does Tech have continuing relationship with Mr. Suchak? Have they placed him in any other jobs since this? They have had a continuing relationship trying to place him in other positions. I don't believe he's been placed. And I don't know that that's in the record, Judge, but they still have communications with him, yes. Judge Hartz? Yeah, I was going to ask that. I wasn't going to ask you for the answer. I thought you had another question. I do. Opposing counsel mentioned that Tech said that they would work with Mahindra on this transfer to permanent employment from temporary employment. So it did have some involvement in that process. How do you immunize Tech from what happened during that process that may have violated the employment discrimination laws? Well, so first of all, to hold Tech Systems liable in this case for what Mahindra did would be to impose strict liability on Tech Systems. But I thought they were saying that Tech said we will work with you on this. That's not strict liability if Tech is involved in the process. Tech, the record evidence is that Tech tried to assist Mr. Suchak and did communicate with Mahindra while Mr. Suchak was trying to get to work there. As permanent employee. As Mahindra's permanent full-time employee, yes. For Mahindra. So what was their involvement? How did they try to help him? They essentially communicated with him and he communicated with Tech, which brings up a big point because Mr. Suchak. And they communicated with Tech or with Mahindra? Tech communicated with both. So in terms of Mr. Suchak seeking permanent employee, Tech was involved in that process of clients getting a permanent job with Mahindra. Is that correct? In a passive sense, Tech was not involved in the decision by Mahindra. What was it? In what way did it try to assist? By essentially communicating with Mr. Suchak and Mr. Suchak at one point emailed Tech and said, they're asking me to complete this CC305. And Wiley O'Daniel from Tech said, we have nothing to do with that. That's not us. That's a Mahindra requirement. We're not involved in their decision making. We're not involved in the onboarding for Mahindra. Sorry to hear that. And that's in the record. Did you say sorry to hear that? Well, I'm paraphrasing. Okay. They didn't say that Mahindra was doing something improper. No. They just said we have nothing to do with that. Correct. Mr. Suchak said that, which is another point when there's references to the record about there being something illegal going on. That's what Mr. Suchak says that the OFCCP says, but that's not in the record from the OFCCP. There's nothing in the record from Mahindra saying why Mahindra didn't hire him. There's no record of that. But the record evidence is that the contract states once the assignment ends, then the employment ends with tech. Could I just ask, there was the possibility of permanent employment later on with Mahindra, but there was also an extension of the temporary assignment, correct? Yes, sir. So why couldn't that be viewed as tech by being part of the extension of the assignment as having some role in facilitating the ultimate employment with Mahindra? Well, so two points. One is, and this was referenced earlier, but tech systems can only do so much. Tech systems cannot force Mahindra to continue the contract. Mahindra can terminate the contract when the assignment ends, and Mahindra determines when the assignment ends. Well, really, it should be integrous, by the way, but on September 2020, and that's the first time that tech is told by Mr. Suchak that Mahindra's requesting this, what did tech do? Tech did ask Mahindra to waive that requirement, and Mr. Suchak was allowed to continue to work for tech systems for another 11 months. The initial term was supposed to be six months. So when we talk about 29 CFR 1630.6 has been alluded to, I don't think specifically mentioned, the effect of the relationship between tech and integrous was that Mr. Suchak got to work at integrous for six months, and the effect of Mahindra inheriting, being the IT manager, was that Mr. Suchak's assignment extended for another 11 months beyond when it was supposed to have been. And without filling out the form. That is absolutely correct, Your Honor. So, I guess looking just at the claims that are based on the request for information, are there any damages for that? Any compensatory damages? Well, not in the record. I don't know if Your Honor is asking me hypothetically, or somebody. I'm trying to figure out whether summary judgment was appropriate because there were no damages that were evidence of damages. In either instance. In either instance. So, let's talk about... Well, the retaliation claim, the argument is that I would have had this permanent job, but for this illegal request, right? So, I mean, are you saying there's no evidence of damages there? Well, I haven't seen record evidence of damage there. I understand Your Honor's point that he didn't get hired by Mahindra. We don't know if he got hired somewhere else after that. So, I'm not saying he couldn't get compensatory damages from Mahindra for the August 31, 2021. But September 2020, I think is what Your Honor was alluding to also. I've already mentioned it, but he kept working there for 11 months until... I didn't use this phrase in the briefing, but I would call it an intervening factor. And the intervening factor is that around April or May of 2021, Mahindra decides that they want to hire people internally for a full-time position. And then it's Mahindra's call. And there's case law that supports tech's position on all of this. But a couple of cases we cited, the Venegas case is another case. Venegas versus Aerotech. That's a case out of the Northern District of Illinois where the client of Aerotech learned that the employee was pregnant and told Aerotech they wanted to end the assignment. And so the assignment was ended. And even there, the district court held that there's no precedent that supports plaintiff's position that a staffing agency should be held liable for its client's actions when the staffing agency has no power over the client. In the McQueen versus Wells Fargo case, it's an age and race case. And this was in our briefing. This is out of the Northern District of Alabama. And the court granted Aerotech summary judgment because it played no part in the decision to terminate the plaintiff. And here, there's no evidence. The record evidence that exists here is that the action Tech took was in September 2020, asked Mahindra to waive the requirement. That's what the evidence is about Tech's involvement in any decision. And Mr. Suchak was allowed to continue working there. Council, could I just go back? You mentioned a few minutes ago the regulation, 1630-6C, I think you know what I'm talking about. And then there was also the statute in Title 42-12112-B2. Mr. Suchak argues that the statute and the regulation supports their argument or his argument that Tech, on the inquiry claims, had some kind of responsibility to protect him from improper disability inquiries and also that Tech had a responsibility for Mahindra's alleged adverse actions. Could you address these arguments relative to the statute and the regulation? I'll certainly try. So as far as 12112-D2, that concerns applicants. So when we talk about Mr. Suchak, in September 2020, he's not an applicant for Tech. And then when we get to April and May of 2021, he's not an applicant for Tech. He's an applicant to go work at Mahindra. So D2 wouldn't apply. D4 does concern current employees. And it says a covered entity shall not require a med exam or make inquiries of an employee as to whether the employee is an individual with a disability, et cetera. Well, first of all, I get back to, Tech didn't make an inquiry. That's the first part of the statute, is that the covered entity make an inquiry or conduct a medical exam. Tech systems did neither. But then it concerns an employee. And so again, the point on both of those, for D2, Mr. Suchak was never, for our purposes, a Tech applicant. And for D4, Tech never made an inquiry or required a medical examination. But then, Your Honor, also you mentioned, I mentioned 29 CFR 1630.6 is the reg about that. And when we look at the literal language of the regulation, it's unlawful for a covered entity to participate in a contractual or other relationship that has the effect of subjecting the covered entity's applicant or employee to the discrimination. Prohibited. The effect of the relationship, I mentioned this earlier, between Tech and Integris was Mr. Suchak got to work for Tech at Integris. And then the effect of Tech inheriting Mahindra, who they didn't ask to have any relationship with, was that Mr. Suchak's employment got extended for another 11 months beyond what it was supposed to be in the first place. So, I hope that answers your question, Judge Matheson, but that's the response to 12112D2 and 4, and the regulation. Could I ask you just one procedural question?  We're on the Nobel Review of Summary Judgment. Are we precluded from considering the documents presented to the district court? The documents that were not referenced below in the actual briefing? Well, I guess the documents that Tech provided with its summary judgment motion, that's fair game for us in terms of consideration. I think I know what you're asking. Is it fair game for Mr. Suchak to refer to? Yes. I gotcha. Yeah, thanks for helping me on that. What's your answer? Well, let me help you again by citing you. I'm getting cited too much today. There you go. According to you, maybe not. I'm sorry, Judge. But in one of your Honor's opinions, that's, well. It wouldn't be valid finding on this panel anymore. Okay. We agree. Well, technically, this court can disregard it because it wasn't properly referred to below. We understand Mr. Suchak was a pro se below. So, I'm not going to raise a big stake about that. Thank you, counsel. Thank you. Do appellants have more time? Okay. Well, case is submitted. Counselor excused. We're going to take a brief recess. Appellants, counsel, are students. Is that right? Well, the reason I'm asking is you couldn't have told that by just your argument. Very well done. We'd like to have very good counsel on both sides and only one side can win. So, that's not how we measure how well you did, but your instructor should be proud of you. Well done.